Honorable James L. Robart

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>MICHAIL WILSON,<br><br>　　　　　Defendant. | NO. CR21-071JLR<br><br>**PLEA AGREEMENT** |

The United States of America, by and through Tessa M. Gorman, Acting United States Attorney for the Western District of Washington, and Thomas M. Woods, Assistant United States Attorney for said District, the Defendant, MICHAIL WILSON, and his attorneys, Todd Maybrown and Brian Klein, enter into the following Agreement, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B):

1.　　**Waiver of Indictment.**  Defendant, having been advised of the right to be charged by Indictment, agrees to waive that right and enter a plea of guilty to the charge brought by the United States Attorney in an Information.

2.　　**The Charge**.  Defendant, having been advised of the right to have this matter tried before a jury, agrees to waive that right and enters a plea of guilty to the following charge contained in the Information: *Conducting an Unlicensed Money*

PLEA AGREEMENT/WILSON - 1

*Transmitting Business*, as charged in Count 1, in violation of Title 18, United States Code, Sections 1960(a), (b)(1)(A), (b)(1)(B) and 2.

By entering this plea of guilty, Defendant hereby waives all objections to the form of the charging document.  Defendant further understands that before entering his guilty pleas, he will be placed under oath.  Any statement given by Defendant under oath may be used by the United States in a prosecution for perjury or false statement.

3.    **Elements of the Offense**.

The elements of the offense of *Conducting an Unlicensed Money Transmitting Business*, as charged in Count 1, are as follows:

*First*, the defendant knowingly conducted, controlled, managed, supervised, directed, or owned all or part of a money transmitting business;

*Second*, the money transmitting business affected interstate or foreign commerce in some manner or degree;

*Third*, the money transmitting business was operated without an appropriate money transmitting license in a State where such operation is punishable as a misdemeanor or a felony under State law, whether or not the defendant knew that the operation was required to be licensed or that the operation was so punishable; and

*Fourth*, the money transmitting business failed to comply with the money transmitting business registration requirements under 31 U.S.C. § 5330 and the regulations prescribed thereunder.

4.    **The Penalties**.  Defendant understands that the statutory penalties applicable to the offense of *Conducting an Unlicensed Money Transmittal Business*, as charged in Count 1, are as follows: a maximum term of imprisonment of not more than five years; a fine of not more than $250,000; a period of supervision following release from prison of not more than three years; and a mandatory special assessment of $100 dollars.

Defendant understands that supervised release is a period of time following imprisonment during which he will be subject to certain restrictive conditions and

PLEA AGREEMENT/WILSON - 2

1    requirements.  Defendant further understands that if supervised release is imposed and he

2    violates one or more of the conditions or requirements, Defendant could be returned to

3    prison for all or part of the term of supervised release that was originally imposed.  This

4    could result in Defendant's serving a total term of imprisonment greater than the statutory

5    maximum stated above.

6        Defendant understands that as a part of any sentence, in addition to any term of

7    imprisonment and/or fine that is imposed, the Court may order Defendant to pay

8    restitution to any victim of the offense, as required by law.

9        Defendant further understands that a consequence of pleading guilty may include

10   the forfeiture of certain property either as a part of the sentence imposed by the Court, or

11   as a result of civil judicial or administrative process.

12       Defendant agrees that any monetary penalty the Court imposes, including the

13   special assessment, fine, costs, or restitution, is due and payable immediately and further

14   agrees to submit a completed Financial Statement of Debtor form as requested by the

15   United States Attorney's Office.

16       5.    **Rights Waived by Pleading Guilty.**  Defendant understands that by

17   pleading guilty, he knowingly and voluntarily waives the following rights:

18            a.    The right to plead not guilty and to persist in a plea of not guilty;

19            b.    The right to a speedy and public trial before a jury of his peers;

20            c.    The right to the effective assistance of counsel at trial, including, if

21                  Defendant could not afford an attorney, the right to have the Court

22                  appoint one for him;

23            d.    The right to be presumed innocent until guilt has been established

24                  beyond a reasonable doubt at trial;

25            e.    The right to confront and cross-examine witnesses against Defendant

26                  at trial;

27            f.    The right to compel or subpoena witnesses to appear on his behalf at

28                  trial;

PLEA AGREEMENT/WILSON - 3

g.      The right to testify or to remain silent at trial, at which trial such silence could not be used against Defendant; and

h.      The right to appeal a finding of guilt or any pretrial rulings.

6.      **United States Sentencing Guidelines**.  Defendant understands and acknowledges that the Court must consider the sentencing range calculated under the United States Sentencing Guidelines and possible departures under the Sentencing Guidelines together with the other factors set forth in Title 18, United States Code, Section 3553(a), including:  (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (4) the need for the sentence to afford adequate deterrence to criminal conduct; (5) the need for the sentence to protect the public from further crimes of the defendant; (6) the need to provide the defendant with educational and vocational training, medical care, or other correctional treatment in the most effective manner; (7) the kinds of sentences available; (8) the need to provide restitution to victims; and (9) the need to avoid unwarranted sentence disparity among defendants involved in similar conduct who have similar records.  Accordingly, Defendant understands and acknowledges that:

a.      The Court will determine applicable Defendant's Sentencing Guidelines range at the time of sentencing;

b.      After consideration of the Sentencing Guidelines and the factors in 18 U.S.C. 3553(a), the Court may impose any sentence authorized by law, up to the maximum term authorized by law;

c.      The Court is not bound by any recommendation regarding the sentence to be imposed, or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Department, or by any stipulations or agreements between the parties in this Plea Agreement; and

d.      Defendant may not withdraw his guilty plea solely because of the sentence imposed by the Court.

PLEA AGREEMENT/WILSON - 4

7.   **Ultimate Sentence**.  Defendant acknowledges that no one has promised or guaranteed what sentence the Court will impose.

8.   **Statement of Facts**.  The parties agree on the following facts.  Defendant admits that he is guilty of the charged offense:

a.   Starting no later than April 2013, and continuing until June 2017, Defendant knowingly conducted, controlled, and directed an unlicensed money transmitting business ("MTB"), primarily by accepting United States currency, and occasionally checks, from customers and in exchange providing his customers with bitcoin (a form of virtual currency).  Defendant conducted his MTB in the Western District of Washington, though some of his customers were located elsewhere. Defendant further conducted his MTB without complying with the appropriate money transmitting licensing requirements under Washington State law, provided for under RCW §§ 19.230.030(1) and 19.230.10(18).  Further, Defendant's MTB was not registered with the United States Department of Treasury, Financial Crimes Enforcement Network ("FinCEN"), as required under 31 U.S.C. § 5330 and the regulations prescribed thereunder.

b.   Defendant solicited customers in part by advertising his MTB on the internet.  On numerous occasions, Defendant met his customers in person to exchange currency for bitcoins, though he would also conduct transactions in which customers would mail currency to Defendant in exchange for bitcoins.  Most of these transactions involved the exchange of bitcoins for sums of currency in excess of one-thousand U.S. dollars.  The value of the funds Defendant exchanged in this manner cumulatively amounted to more than $550,000 but less than $1,500,000.

c.   In October 2015, a federal law enforcement undercover agent met with Defendant at a location in the Western District of Washington.  The agent represented that she wished to convert unlawfully earned currency into bitcoins as means of transferring criminally derived funds from the United States to Canada while avoiding law enforcement detection.

d.   From October 2015 through June 2017, Defendant and the agent met on multiple occasions at locations in the Western District of Washington.  Over the course of these meetings, Defendant accepted currency from the agent—cumulatively amounting to approximately $142,000—which Defendant exchanged for bitcoins that he transferred a law enforcement-controlled virtual currency wallet.  One of those transactions occurred on February 28, 2017, during which Defendant accepted $20,000 in currency, which the agent represented were proceeds of illegal activity, and in exchange Defendant transferred bitcoins to a law enforcement-controlled virtual currency wallet. In several of the meetings with the undercover agent, Defendant described various

UNITED STATES ATTORNEY
700 STEWART STREET, STE. 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

methods by which transactions conducted using bitcoins could be obfuscated, and Defendant further expressed concern that the bitcoins he provided could be traced back to him.

e.      In the course of conducting his unlicensed MTB, Defendant created, maintained, and utilized numerous Bitcoin virtual currency wallets, which were located in, and/or accessible via, multiple electronic devices belonging to Defendant.  These wallets included the following: (1) Mycelium Bitcoin wallets, accessible via Defendant's Samsung phone and/or Apple iPhone, from which law enforcement seized approximately 407.74807353 bitcoins on June 14, 2017 (the "Mycelium Bitcoins"); and (2) Bitcoin Core wallets, accessible via Defendant's laptop computer, which, as of on or about June 28, 2017, contained approximately 379.65095816 bitcoins (the "Bitcoin Core Bitcoins"). The Mycelium Bitcoins and the Bitcoin Core Bitcoins—along with $40,000 in U.S. currency and Defendant's 2013 Range Rover Evoque, both of which law enforcement seized on June 14, 2017—constitute property involved in Defendant's conduct of an unlicensed MTB or are traceable to such property.

f.      The parties agree that the Court may consider additional facts contained in the Presentence Report (subject to standard objections by the parties) and/or that may be presented by the United States or Defendant at the time of sentencing, and that the factual statement contained herein is not intended to limit the facts that the parties may present to the Court at the time of sentencing.

9.      **Sentencing Factors**.

The parties agree that the following United States Sentencing Guidelines (the "Sentencing Guidelines" or "USSG") provisions apply to Count 1 in this case:

a.      A base offense level of six, pursuant to USSG § 2S1.3(a)(2);

b.      A fourteen-point addition to the offense level, because the amount of funds involved in the offense exceeded $550,000, but was less than $1,500,000, pursuant to USSG § 2S1.3(a)(2) and § 2B1.1(b)(1)(H); and

c.      A two-point increase to the offense level, because Defendant knew or believed that funds involved in the offense were proceeds or unlawful activity intended to promote unlawful activity, pursuant to USSG § 2S1.3(b)(1).

The parties agree they are free to present arguments regarding the applicability of all other provisions of the Sentencing Guidelines.  Defendant understands, however, that at the time of sentencing, the Court is free to reject these stipulated adjustments, and is

UNITED STATES ATTORNEY
700 STEWART STREET, STE. 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

further free to apply additional downward or upward adjustments in determining Defendant's Sentencing Guidelines range.

10. **Sentencing Recommendation**. The government agrees to recommend a sentence no greater than twenty-four months. The government is free to recommend other conditions of the sentence, including the length and terms of supervision. Defendant is free to recommend any sentence. Defendant understands that the Court is not bound by the parties' recommendations.

11. **Acceptance of Responsibility.** At sentencing, *if* the district court concludes Defendant qualifies for a downward adjustment acceptance for acceptance of responsibility pursuant to USSG § 3E1.1(a) and Defendant's offense level is 16 or greater, the United States will make the motion necessary to permit the district court to decrease the total offense level by three (3) levels pursuant to USSG § 3E1.1(a) and (b), because Defendant has assisted the United States by timely notifying the United States of his intention to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

12. **Forfeiture**. The Defendant understands that the forfeiture of property is part of the sentence that must be imposed in this case. The Defendant agrees to forfeit to the United States immediately his right, title, and interest in all property that was involved in his commission of *Conducting an Unlicensed Money Transmitting Business*. All such property is forfeitable pursuant to Title 18, United States Code, Section 982(a)(1) and includes but is not limited to:

    a. Approximately 407.74807353 bitcoins, seized on or about June 14, 2017, from Mycelium virtual currency wallets located in or accessible via a Samsung phone and/or Apple iPhone belonging to Defendant, and any derivative units of virtual currency, including but not limited to units of Bitcoin Cash and Bitcoin Gold;

    b. Approximately 379.65095816 bitcoins that were held in Bitcoin Core virtual currency wallets located in or accessible via Defendant's laptop computer in June 2017 and seized from Defendant on or about June 28, 2017, , and any

UNITED STATES ATTORNEY
700 STEWART STREET, STE. 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

derivative units of virtual currency, including but not limited to units of Bitcoin Cash and Bitcoin Gold;

c.   Approximately $40,000 in U.S. currency, seized from Defendant on or about June 14, 2017; and

The Defendant agrees to fully assist the United States in the forfeiture of the above-described property and to take whatever steps are necessary to pass clear title to the United States, including but not limited to: surrendering title and executing any documents necessary to effect forfeiture; assisting in bringing any property located outside the United States within the jurisdiction of the United States; and taking whatever steps are necessary to ensure that property subject to forfeiture is not sold, disbursed, wasted, hidden, or otherwise made unavailable for forfeiture. The Defendant agrees not to file a claim to any of the above-described property in any federal forfeiture proceeding, administrative or judicial, which may be or has been initiated.

The United States reserves its right to proceed against any remaining property not identified in this Plea Agreement, including any property in which the Defendant has any interest or control, if that property was involved in his commission of *Conducting an Unlicensed Money Transmitting Business*.

Pursuant to this plea agreement, Homeland Security Investigations (HSI) and U.S. Customs and Border Protection (CBP) have agreed to return the Defendant's 2013 Range Rover Evoque to him. The Defendant and/or his counsel can contact HSI/CBP to arrange for its return.

13.   **Non-Prosecution of Additional Offenses**.  As part of this Plea Agreement, the United States Attorney's Office for the Western District of Washington agrees to not prosecute Defendant for any additional offenses known to it as of the time of this Agreement that are based upon evidence in its possession at this time and that arise out of the conduct giving rise to this investigation.  In this regard, Defendant recognizes the United States has agreed not to prosecute all of the criminal charges the evidence establishes were committed by Defendant solely because of the promises made by

PLEA AGREEMENT/WILSON - 8

Defendant in this Agreement.  Defendant agrees, however, that for purposes of preparing the Presentence Report, the United States Attorney's Office will provide the United States Probation Office with evidence of all conduct committed by Defendant.

Defendant agrees that any charges to be dismissed before or at the time of sentencing were substantially justified in light of the evidence available to the United States, were not vexatious, frivolous or taken in bad faith, and do not provide Defendant with a basis for any future claims under the "Hyde Amendment," Pub. L. No. 105-119 (1997).

14.     **Breach, Waiver, and Post-Plea Conduct.**  Defendant agrees that if Defendant breaches this Plea Agreement, the United States may withdraw from this Plea Agreement and Defendant may be prosecuted for all offenses for which the United States has evidence.  Defendant agrees not to oppose any steps taken by the United States to nullify this Plea Agreement, including the filing of a motion to withdraw from the Plea Agreement.  Defendant also agrees that if Defendant is in breach of this Plea Agreement, Defendant has waived any objection to the re-institution of any charges in the Indictment that were previously dismissed or any additional charges that had not been prosecuted.

Defendant further understands that if, after the date of this Agreement, Defendant should engage in illegal conduct, or conduct that violates any conditions of release or the conditions of his confinement, (examples of which include, but are not limited to, obstruction of justice, failure to appear for a court proceeding, criminal conduct while pending sentencing, and false statements to law enforcement agents, the Pretrial Services Officer, Probation Officer, or Court), the United States is free under this Agreement to file additional charges against Defendant or to seek a sentence that takes such conduct into consideration by requesting the Court to apply additional adjustments or enhancements in its Sentencing Guidelines calculations in order to increase the applicable advisory Guidelines range, and/or by seeking an upward departure or variance from the calculated advisory Guidelines range.  Under these circumstances, the United States is

PLEA AGREEMENT/WILSON - 9

UNITED STATES ATTORNEY
700 STEWART STREET, STE. 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

free to seek such adjustments, enhancements, departures, and/or variances even if otherwise precluded by the terms of the plea agreement.

15.   **Waiver of Appellate Rights and Rights to Collateral Attacks.**
Defendant acknowledges that, by entering the guilty plea(s) required by this plea agreement, Defendant waives all rights to appeal from Defendant's conviction, and any pretrial rulings of the Court, and any rulings of the Court made prior to entry of the judgment of conviction.  Defendant further agrees that, provided the Court imposes a custodial sentence that is within or below the Sentencing Guidelines range (or the statutory mandatory minimum, if greater than the Guidelines range) as determined by the Court at the time of sentencing, Defendant waives to the full extent of the law:

a.   Any right conferred by Title 18, United States Code, Section 3742, to challenge, on direct appeal, the sentence imposed by the Court, including any fine, restitution order, probation or supervised release conditions, or forfeiture order (if applicable); and

b.   Any right to bring a collateral attack against the conviction and sentence, including any restitution order imposed, except as it may relate to the effectiveness of legal representation; and

This waiver does not preclude Defendant from bringing an appropriate motion pursuant to 28 U.S.C. § 2241, to address the conditions of Defendant's confinement or the decisions of the Bureau of Prisons regarding the execution of Defendant's sentence.

If Defendant breaches this Plea Agreement at any time by appealing or collaterally attacking (except as to effectiveness of legal representation) the conviction or sentence in any way, the United States may prosecute Defendant for any counts, including those with mandatory minimum sentences, that were dismissed or not charged pursuant to this Plea Agreement.

16.   **Voluntariness of Plea**.  Defendant agrees that he has entered into this Plea Agreement freely and voluntarily and that no threats or promises, other than the promises contained in this Plea Agreement, were made to induce Defendant to enter his plea of guilty.

PLEA AGREEMENT/WILSON - 10

17.     **Statute of Limitations**.  In the event this Agreement is not accepted by the Court for any reason, or Defendant has breached any of the terms of this Plea Agreement, the statute of limitations shall be deemed to have been tolled from the date of the Plea Agreement to:  (1) thirty (30) days following the date of non-acceptance of the Plea Agreement by the Court; or (2) thirty (30) days following the date on which a breach of the Plea Agreement by Defendant is discovered by the United States Attorney's Office.

///

PLEA AGREEMENT/WILSON - 11

UNITED STATES ATTORNEY
700 STEWART STREET, STE. 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

18. **Completeness of Agreement**. The United States and Defendant acknowledge that these terms constitute the entire Plea Agreement between the parties, except as may be set forth on the record at the change of plea hearing in this matter. This Agreement binds only the United States Attorney's Office for the Western District of Washington. It does not bind any other United States Attorney's Office or any other office or agency of the United States, or any state or local prosecutor.

Dated this 21st day of April, 2021.

MICHAIL WILSON
Defendant

TODD MAYBROWN/BRIAN KLEIN
Attorney for Defendant

For

TODD GREENBERG
Assistant United States Attorney

THOMAS WOODS
Assistant United States Attorney

PLEA AGREEMENT/WILSON - 12

UNITED STATES ATTORNEY
700 STEWART STREET, STE. 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970